NATHANIEL S. BARNETT and others, Appellants, *v.* DEBORAH KINCAID and others, Respondents.

(GENERAL TERM, THIRD DISTRICT, MARCH, 1870.)

The claims set forth in an executor's petition for authority to sell, mortgage or lease his testator's real estate (2 R. S., 102, § 1, &c.), were in the aggregate $4,314; upon the hearing the executor admitted funds in hand to the amount of $1,332, and formal proof was given of liabilities of the estate to the extent of $1,723; the surrogate, without hearing further proof, directed the sale of a farm valued at $6,200.—*Held*, on appeal, that the order should be affirmed.

*Held*, further, that the surrogate might refuse upon the hearing to hear testimony offered for the purpose of establishing a disputed claim.

*Quere.*—Whether the surrogate may direct the leasing of land, on such an application, where all the parties interested in the real estate are adults.

APPEAL from a decree of the surrogate of Rensselaer county.

Barnett and Percy, as administrators of John Barnett, deceased, presented a petition to the surrogate of Rensselaer county praying for authority to mortgage, lease or sell a portion of the real estate left by their intestate, for the payment of his debts. The petition and schedule annexed stated claims amounting to $4,314.26 as the liabilities against

Barnett v. Kincaid.

the estate.   No answer to the petition was filed, and no written objections were interposed to any of the claims set forth in the petition.   The proper parties having been brought before the surrogate, the administrators admitted the personal property in their hands to be $1,332, and various claims were proved in the aggregate for $1,723.40.   It appeared that there were disputed claims unadjudicated against the estate in favor of the appellants to the amount of $1,900 and the counsel for the claimant offered to establish them ; but the surrogate did not entertain the offer, and no proof was made of the other claims set forth in the petition.

The real estate of the deceased consisted of a lot of land worth $1,500, and a wood lot worth $100, and a farm of some, 286 acres, divided into two tracts of 161 acres, with a house, and 124 acres respectively.   The value of the latter tract was shown, under fair circumstances, to be about fifty dollars per acre, or $6,200.   The first tract was mortgaged for $3,400 and two years' interest on the mortgage was unpaid.   There was a ground rent on the whole farm.   The surrogate determined that there were valid debts larger in amount than the personal property in the hands of the administrators; and being satisfied that there were other large claims against the estate, suspended any further hearing, and ordered a sale of the 124 acre tract.   From this order, the widow and two of the heirs appealed.

*Robert H. McClellan*, for the appellants.

*C. E. Patterson* and *H. Peck*, for the respondents.

Present—HOGEBOOM, PECKHAM and MILLER, JJ.

By the Court—MILLER, J.   The principal question which arises upon this appeal relates to the decision of the surrogate directing a sale of the real estate of the intestate.   It is contended by the appellant's counsel that it was error to order a sale of 124 acres of land, to pay debts established at

$1,723.40, when the administrators had on hand the sum of $1,332.

The foregoing amount of $1,723.40, was adjudged to be the amount of valid debts as justly due and owing upon the application before the surrogate ; but it appears, from the schedule annexed to the petition, that claims had been presented, amounting in all to $4,314.26. There was also a claim of Sarah M. Barnett, of some $600, which was disputed and not passed upon by the surrogate. If all of these claims are properly to be considered by the surrogate it would leave a large excess of debts over and above the personal estate, besides the commissions and expenses of administration, and the costs of the proceedings to sell the real estate.

Before the surrogate can make an order for the mortgaging, leasing or sale of real property, he must be satisfied of the existence of debts, and that the personal estate is insufficient for their payment. (2 R. S., 102, § 14.) I think that it is not essential that the debts should all be proved at the first hearing ; for it is provided that upon the distribution of the proceeds of sale, that any other debts or demands which shall be presented, and which were not established upon the original application for a sale, shall be proved to the satisfaction of the surrogate ; and the same proceedings may be had to ascertain the same, as prescribed upon the hearing upon the application for authority to sell. (2 R. S., 107, § 42.) It would, therefore, seem that the surrogate was authorized to take into consideration, not only the debts allowed, but such others as were presented, and would probably be finally established as lawful demands against the estate in determining the question, whether it was most advantageous to mortgage, lease, or sell the real estate. If it appear that a sufficient sum can be raised advantageously, then he is to direct a mortgage or lease to be made. (2 R.S., S., 102, § 15.) If the moneys required cannot be thus raised advantageously to the estate, then a sale is to be had. (See 103, § 18.) He is to determine from all the facts and circumstances, according to his best judgment, which course

will be most advantageous for the estate; and unless it is manifest, that he has abused the discretion conferred upon him, I think his decision is not the subject of review. It is not denied that either a mortgage, lease, or sale was necessary for the payment of the debts of the intestate; and it is quite evident that if the debts, beyond those which were allowed, are to be taken into consideration, that a lease or mortgage would not furnish the amount required as well as a sale. To pay the debts allowed, and those which were presented, over and above the amount on hand of personal property ($1,332), between $3,000 and $4,000 would be required. The farm was mortgaged for $3,400, subject to a ground rent. The interest on the mortgage had not been paid for two years, and the mortgage had been left with an attorney for collection. According to the evidence, the farm would rent for $1,000 to $1,400 per annum, and out of this must be paid the annual value of the widow's dower, the annual interest on the first mortgage, as well as the new one, besides taxes and necessary repairs. It may be added, that all the heirs but two, besides the widow, concur in the propriety of a sale. Upon the facts presented before the surrogate, it is apparent that there were strong reasons for the conclusion at which he arrived, that a sale would be most advantageous to the parties, and I discover no sufficient reason for disturbing his adjudication. It may also be remarked, that as all the parties in interest were adults, it is quite questionable, whether the surrogate had authority to authorize a lease for a term of years. (2 R. S., 103, § 16.)

I think that the surrogate committed no error in excluding the testimony offered by Sarah M. Barnett in support of her claim, to be given by one of the heirs-at-law as to a conversation between the deceased and the claimant. It is a sufficient answer to the offer made, that the evidence related to a disputed claim which was contested, and the validity of which it is not ordinarily within the scope of the duties of a surrogate's court to try and adjudicate upon. (*Tucker* v. *Tucker*, 4 Keyes, 136.) The object of the proceeding is to ascertain

whether there are *bona fide* claims against the estate sufficient to exhaust the personal estate; and the surrogate is to examine the allegations, and proofs of the executors or administrators applying, and of all persons interested in the estate who shall think proper to oppose the application. (2 R. S., 101, § 8.)  While the heirs or devisees may contest the validity and legality of any debts, demands or claims which may be represented as existing against the testator or intestate (2 R. S., 101, § 14), there is no authority at this stage of the proceeding for allowing a contest which would be more appropriate before another tribunal.  In the exercise of a sound discretion, at least, the surrogate had a right to determine after sufficient appeared to indicate that a sale was necessary, that the order should not be delayed to await the termination of the litigation.  The parties presenting a claim which is disputed might well be left to pursue their remedy in some other court where the controversy could more properly be determined ; and if the claim is not thus established an opportunity will be furnished upon the distribution for that purpose.  (2 R. S., 107, § 41.)

The same remarks are applicable to the refusal of the surrogate to hear further evidence as to the claim of Sarah Barnett and Nathaniel S. Barnett.

As to the claim of Volney Richmond, which was allowed by the surrogate, I think there was sufficient evidence to warrant its allowance.

As there was not error in the proceedings, the decree for a sale should be affirmed with costs to the respondents, to be paid out of the estate.

Decree affirmed.